**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Steven A. Turner,<br><br>　　　　Defendant. | No. CR-21-00056-001-PHX-JAT<br><br>**ORDER** |

Before the Court is Defendant Steven A. Turner's Amended Motion for Early Termination of Supervised Release (Doc. 47). The Government filed a Response opposing early termination of supervised release (Doc. 48). Additionally, the Court has received input from the probation officer, who also objects to an early termination.[1] Turner filed a Reply (Doc. 49). For the reasons stated below, the Court denies Turner's request for early termination of supervised release.

## I.    BACKGROUND

On January 28, 2021, Turner pleaded guilty to one count of securities fraud. (Doc. 29). In his Plea Agreement, Turner agreed to pay full restitution to his victims. (Doc. 29). The Court subsequently sentenced him to 60 months imprisonment followed by 36 months

---

[1] The probation officer further requests that Defendant's monthly restitution be increased. The contents of this Order address Defendant's Motion for Early Termination of Supervised Release. Any proposed changes to the conditions of Defendant's supervised released must be raised in a separate motion. Federal Rule of Criminal Procedure 32.1(c) requires that "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing" unless the person waives the hearing, or the relief sought is favorable to the person and the government does not object.

of supervised release, and ordered restitution in the amount of $14,022,424.00, to be paid in monthly installments of $250.00. (Doc. 30). On April 14, 2023, the Court reduced Turner's sentence to 48 months imprisonment because of changed circumstances, which he has completed. (Doc. 39; Doc. 40). As of this date, Turner has completed 19 of 36 months of his supervised release and has 17 months remaining. (*See* Doc. 39; Doc. 47). Turner has paid over $1 million in restitution and still owes more than $12 million. (Doc. 48 at 2; Doc. 49 at 2).

On October 20, 2025, Turner filed his Amended Motion for Early Termination of Supervised Release. (Doc. 47). On November 4, the Probation Office for the District of Arizona issued a memorandum recommending that Turner's request for early termination of supervised release be denied. On December 2, the Government filed its Response opposing early termination of supervised release. (Doc. 48). On December 9, Turner filed his Reply. (Doc. 49).

## II. LEGAL STANDARD

"The correct legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e)." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). "The statute provides that, after considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'" *Id.* (quoting 18 U.S.C. § 3583(e)). The Court "enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.*

The factors the Court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) deterrence; (3) protection of the public; (4) the need to provide the defendant with educational, vocational training, medical care or other rehabilitation; (5) the sentence and sentencing range established for the category of defendant; (6) any pertinent policy statement by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims

of the offense.

*United States v. Smith*, 219 F. App'x 666, 667 n.3 (9th Cir. 2007) (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D),(a)(4), (a)(5), (a)(6), and (a)(7)); *see also Esteras v. United States*, 606 U.S. 185, 195 (2025).

The Supreme Court has emphasized that supervised release "is not a punishment in lieu of incarceration." *Esteras*, 606 U.S. at 196 (quoting *United States v. Granderson*, 511 U.S. 39, 50 (1994)). "Rather, it 'fulfills rehabilitative ends' and 'provides individuals with postconfinement assistance.'" *Id.* (quoting *United States v. Johnson*, 529 U.S. 53, 5960 (2000)). Thus, regarding supervised release, courts are to consider "the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution." *Id.* The defendant bears the burden of demonstrating that early termination is justified. *See United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006); *United States v. Oak*, 398 F. App'x 274, 275 (9th Cir. 2010).

### III. DISCUSSION

The Court has considered all of the § 3553(a) factors. One of the factors the Court must consider is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Given that Turner still owes more than $12 million in restitution to numerous victims, the Court will not terminate Turner's supervised release. *See Oak*, 398 F. App'x at 274–75 ("The district court properly based its decision [refusing to grant an early termination of the defendant's supervised release] upon the finding that [the defendant] still owes more than $200,000 in restitution."); *United States v. Morris*, No. CR-20-50242-PHX-SPL, 2022 WL 4124946, at *1 (D. Ariz. Aug. 19, 2022) ("Given that Defendant still owes more than $1.3 million in restitution, the Court will not terminate Defendant's supervised release.").

Turner argues that in addition to the $250.00 per month that he is required to pay towards restitution, 15% of his social security benefit is automatically deducted every month as restitution—which the Court has calculated to be $439.95 per month based on Turner's stated monthly benefit—and therefore supervision is no longer necessary to

ensure restitution payments. (Doc. 49 at 2). However, supervised release serves additional purposes than simply ensuring continued payments towards restitution. Special conditions of Turner's supervised release include giving his Probation Officer access to financial information, prohibiting him from "making major purchases, incurring new financial obligations, or entering into any financial contracts" without the Probation Officer's prior approval, and prohibiting him from contacting his victims. (Doc. 39 at 4). In addition to ensuring the continued payment of restitution, this financial accountability protects the public and Turner's victims by allowing the Probation Officer to assess Turner's ability to pay restitution to his victims. The Court finds this supervision appropriate given the financial nature of the offense and the substantial amount of restitution still owed.

Turner argues that he is entitled to early termination because he has demonstrated successful rehabilitation and reintegration through his employment stability and compliance with the requirements of his supervision. (Doc. 47 at 2–4). He argues that the purpose of supervision has been met, and further supervision would work against reintegration rather than help promote it. (*Id.* at 4). While the Court commends Turner's compliance with the terms of his supervision and his contributions and achievements while incarcerated, Turner's good behavior does not justify early termination of supervised release. *See United States v. Bauer*, No. 5:09-cr-00980 EJD, 2012 WL 1259251, at *2 (N.D. Cal. Apr. 13, 2012) ("[C]ompliance with release conditions, resumption of employment and engagement of family life are expected milestones rather than a change of circumstances rendering continued supervision no longer appropriate."); *United States v. Sine*, No. CR-S-02-079 KJM, 2012 WL 1901298, at *2 (E.D. Cal. May 24, 2012) ("[M]odel prison conduct and full compliance with the terms of supervised release is what is expected of . . . [those] serving terms of supervised release and does not warrant early termination." (internal quotation marks and citation omitted)).

Turner further argues that his "several chronic health conditions" justify early termination of supervised release. (Doc. 47 at 3). Specifically, Turner argues that his medical conditions "require frequent appointments, medical testing, and continuous

treatment adjustments," and the requirement of getting permission for travel creates "barriers and delays that increase stress and affect both his health and employment." (Doc. 49 at 3).

One of the standard conditions of Turner's supervision is that he "must not knowingly leave the federal judicial district where [he is] authorized to reside without first getting permission from the court or the probation officer." (Doc. 39 at 2). However, Turner does not indicate how often he is required to travel outside his authorized federal judicial district for health or employment reasons, and he does not indicate whether he attempted to address these concerns with his Probation Officer. The Probation Officer indicates that Turner's supervision is "minimally invasive," requiring Turner to "report monthly through written or electronic means" with in-person contact only as needed. The Court finds that Turner has not established that this travel restriction impacts his medical treatment or employment such that it would justify early termination of supervised release.

## IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Early Termination of Supervised Release (Doc. 47) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall provide a copy of this Order to U.S. Probation Officer Rene Rivera.

Dated this 14th day of January, 2026.

James A. Teilborg
Senior United States District Judge

cc: Dft.